**Richard N. BELL, Plaintiff–Appellant,**

v.

**Charles LANTZ, Defendant–Appellee.**

**No. 15–2341**

United States Court of Appeals, Seventh Circuit.

Argued January 19, 2016

Decided June 17, 2016

Richard N. Bell, pro se.

Paul B. Overhauser, Attorney, Overhauser Law Offices LLC, Greenfield, IN, for Defendant–Appellee.

Before EASTERBROOK, ROVNER, and SYKES, Circuit Judges.

ROVNER, Circuit Judge.

This appeal concerns an award of attorney's fees by the district court to Charles Lantz, who was the defendant in a suit brought by Richard Bell under the Copyright Act, 17 U.S.C. § 501 et seq., which was later voluntarily dismissed. Bell does not challenge the court's decision to award fees, but contests the amount of fees awarded.

The original copyright infringement action was filed by Bell, a practicing attorney and professional photographer, against forty-seven defendants including Lantz. Bell had taken a photograph of the Indianapolis skyline (the "Indianapolis Photo"), and alleged that each of the defendants violated the Copyright Act in publishing his photograph on their websites. Lantz filed an answer denying all allegations of copyright infringement of the Indianapolis Photo. Through responses to interrogatories, Bell confirmed that Lantz had not infringed his

copyright, and the district court granted Bell's motion to voluntarily dismiss his copyright infringement claim with prejudice.

In light of that dismissal with prejudice, Lantz filed a motion as the prevailing party for costs and attorney's fees under 17 U.S.C. § 505 of the Copyright Act. That provision allows the district court in its discretion to permit the recovery of all costs of litigation in any copyright civil action, including an award of reasonable attorney's fees. The district court considered the nonexclusive factors outlined in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), and chose to exercise its discretion to award fees. As to those factors, the district court determined: (1) that the action was frivolous because Bell had no evidence to support his claim against Lantz; (2) that Bell's motivation in filing the action was questionable in that Bell had filed a multiplicity of suits, each involving the same or similar infringement allegations with quick settlements, and improperly joined defendants in such actions thus saving extensive filing fees, including the action against Lantz involving forty-seven defendants; (3) that the action was objectively unreasonable because he lacked any evidence to support it; and (4) that awarding fees would advance the considerations of compensation and deterrence. On appeal, Bell does not challenge the court's determination to award fees under those factors. Instead, Bell argues that the court erred in its determination as to the amount of fees to award.

■ Bell first argues that the district court erred in refusing to reduce the fee award based on Lantz's failure to mitigate his costs and fees. Relying on our decisions in *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir. 1988), and *Leffler v. Meer*, 936 F.2d 981, 987 (7th Cir. 1991), Bell asserts

that all parties and their counsel have a continuing obligation to mitigate costs and fees by immediately taking action to terminate a case where possible. Bell asserts that in this case Lantz ran up fees rather than informing Bell early in the litigation that he had sued the wrong defendant.

Bell's argument, although captioned as a mitigation requirement, comes very close in this case to imposing an affirmative burden on the defendant to disprove plaintiff's case—an argument which lacks any support in precedent. But we need not address the legal issue presented by Bell as to the extent of a defense counsel's duty to mitigate fees by seeking rapid termination of a defective case because Bell's argument fails first on the facts. The crux of Bell's argument regarding Lantz's dilatory conduct is Bell's contention that defense counsel Paul Overhauser was informed as early as March 4, 2013 that Lantz did not publish the Indianapolis Photo, and that Overhauser failed to convey that information to Bell. In fact, Bell indicates that Lantz affirmatively sought to evade revealing that information by avoiding a response when questioned. At oral argument, we explored the basis for Bell's factual claim because the citations to the record did not provide a factual basis for the claim. The parties subsequently filed supplementary responses as to that and another issue, but those responses similarly do not support Bell's contention. Bell relies on the following responses by Overhauser:

> Q What do you mean you disagree? When is the first—when did you inform me that your client did not publish the photograph?
> A On March 4, 2013, Mr. Lantz filed his answer to the complaint.
> Q And you think that is sufficient?
> A Yes.

That cursory discussion is the only record support that Bell identifies for his contention that Overhauser knew on March 4, 2013 that Lantz did not publish the photograph yet withheld that factual information from Bell. Yet that colloquy reveals nothing as to what Overhauser knew about the matter. In fact, it indicates that the answer contained all of the information he knew.

Overhauser merely directed Bell to his client's answer which denies the allegations of the complaint. In that answer, Lantz specifically denied the following allegations: (1) that each defendant published the "Indianapolis Photo" on a website they created even though they had no rights or authority to publish; (2) that Lantz was located in Indianapolis, Indiana, and created and operated a website with the domain name of lantzusa.com and conducted business in this district; (3) that each defendant downloaded or took the Indianapolis Photo from the internet without permission from the owner; and (4) that each defendant began publishing the photo and using it for his or her own commercial use without paying for that use or obtaining authorization. That response should have put Bell on notice that Lantz contested the allegation that he published the photograph on his website without authorization. But the record cite does not indicate what Overhauser knew at all and, more importantly, it reveals that his client denied the allegations in the complaint in his answer, including the claim that he published the Indianapolis Photo. Bell was, of course, aware of the statements in the answer, and therefore the record cite fails to reveal any information regarding the claim that was withheld from him.

The district court considered Bell's claim and rejected it for precisely that reason. The court held that Bell could not demonstrate that Lantz failed to timely notify him that Lantz had not published the photo, because Lantz denied all allega-

tions of infringement when he filed his answer. Because Bell has failed to point to evidence that Overhauser possessed additional knowledge that was withheld to delay proceedings, the holding by the district court was proper. In fact, the district court found that Lantz denied liability at his first opportunity, and that Lantz "laid low" throughout the litigation, thus reducing the expense of the litigation, with fees increasing only as Lantz was required to respond to Bell's filings. The district court noted that although defense counsel is not required to determine and take the most economical defense strategy, it appears that Lantz may have taken the most economical one here. Bell has given us no reason to disturb those findings. Bell's argument lacks factual support in that he presented no evidence as to Overhauser's knowledge at the time of the filings, and the answer alerted Bell that Lantz was denying that he published the Indianapolis Photo.

■ Bell next argues that the district court erred in awarding fees for the time spent by defense counsel defending the fee petition. Relying on *Baker Botts LLP v. ASARCO LLC*, —— U.S. ——, 135 S.Ct. 2158, 192 L.Ed.2d 208 (2015), Bell asserts that a law firm cannot be awarded fees for defending its fee petition. In *Baker Botts*, the Supreme Court noted that under the American Rule, each litigant pays her own fees unless a statute specifically authorizes otherwise. The Court noted that statutes specifically authorizing otherwise "tend to authorize the award of 'a reasonable attorney's fee,' 'fees,' or 'litigation costs,' and usually refer to a 'prevailing party' in the context of an adversarial 'action.' " 135 S.Ct. at 2164. That is precisely the type of language in the Copyright Act, which provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Court held that statutes with such language displace the American Rule.

That contrasts with the statute at issue in *Baker Botts*, which contained language authorizing fees only for certain services provided by attorneys. Because only certain fees were explicitly allowed, the Court held that the statute did not displace the American Rule with respect to other fees incurred such as fee defense litigation. Because the language in the Copyright Act modifies the American Rule, the limitation in *Baker Botts* is irrelevant and does not provide a basis to reverse the district court's award of such fees. See *Fogerty*, 510 U.S. at 533–34, 114 S.Ct. 1023 ("§ 505 is one situation in which Congress has modified the American Rule to allow an award of attorney's fees in the court's discretion"); *see also Kirtsaeng v. John Wiley & Sons, Inc.* No. 15-375, —— U.S. ——, 136 S.Ct. 1979, 1985, 195 L.Ed.2d 368, 2016 WL 3317564, at *4 (U.S. June 16, 2016) (reiterating that § 505 is a fee-shifting statute); *Commissioner, INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (fee-shifting statute permits court to award fees for time spent in litigation over fees without second finding that fees for fees are themselves warranted).

■ Finally, Bell challenges the court's calculation of the attorney's fees, asserting that the court improperly awarded an hourly rate of $410 for defense counsel when the evidence established that defense counsel charged Lantz only an hourly rate of $250. The district court rejected this argument based on its belief that Lantz produced evidence supporting his $410 rate and Bell failed to do the same for the claim that the $250 rate was proper. The district court's entire analysis of the issue is as follows:

Mr. Bell failed to designate any exhibits that support his assertion that Mr. Overhauser's rate was $250.00 per hour. He did not submit to the Court any of the

documents produced in discovery that allegedly support his position. The exhibits designated for the Court's review support Mr. Lantz's attorney's fee request in regard to Mr. Overhauser's rates and the amount of time spent on the case. Mr. Overhauser's deposition testimony also supports Mr. Lantz's fee request. Given the nature of this litigation, Mr. Overhauser's years of experience, and the documents provided to the Court, the Court determines that the fees requested are reasonable.

The court's determination, then, is based on the belief that Bell failed to present any exhibits supporting his claim that the hourly rate was $250, whereas Lantz presented evidence in support of his attorney's $410 rate. But the court was mistaken in that belief. Bell in fact presented significant evidence establishing that the actual hourly rate charged by Overhauser to Lantz was $250. However, those exhibits were filed under seal (although they are appended to the briefs in this appeal), whereas the exhibits by Lantz were not, and that may explain why the exhibits may have been overlooked by the district court here. Those exhibits include the formal engagement letter sent out by Overhauser to Lantz in this case, confirming the engagement of Overhauser Law Offices, LLC, in the matter and setting forth the basis upon which it would represent Lantz. The engagement letter acknowledges Lantz's LegalShield contract, and indicates that Overhauser agreed to provide those legal services at a rate of $250 per partner hour. It further provides that Lantz will be responsible for court costs, travel costs, expert witness fees, paralegal and secretary fees, post-judgment relief and any other out-of-pocket expense. The engagement letter also provides that it would direct its invoices to LegalShield "for now," and if and when it exhausted the hours for which LegalShield was paying, it would send its invoices directly to Lantz

for payment. Bell attached those invoices as exhibits, and with one exception they reveal that the legal services are billed at a rate of $250 per hour. Invoices dated February 5, 2013; March 5, 2013; June 7, 2013; May 5, 2014; August 5, 2014; September 5, 2014; and October 10, 2014, itemizing the legal services in quarter-hour increments, all bill at an attorney rate of $250 per hour. Only the invoice dated January 27, 2015, after Lantz filed the Motion for Fees, billed for attorney time at the $410 hourly rate.

Lantz argues that the invoices with the $250 rate were those sent to LegalShield and copied to him because LegalShield had an hourly cap on fees of $250, and that Lantz was liable for the balance. There are myriad problems with that argument. First, the engagement letter sets forth the $250 rate but never indicates that the total rate will be $410 and that Lantz will be responsible for the difference, despite listing a litany of other expenses such as court costs and travel fees for which Lantz would be responsible. Furthermore, that engagement letter provides that Overhauser Law Offices would direct its invoices to LegalShield "for now," and if and when it exhausted the hours for which LegalShield was paying, it would send its invoices directly to Lantz for payment. If Lantz were responsible for the higher amount from the outset, then Overhauser Law Offices would have directed its invoices to Lantz for payment immediately. That it would do so only if the hours limit was reached indicates that there was no gap between the rate paid by LegalShield and the actual hourly rate charged. Finally, the argument that the invoice reflected only a $250 rate because that was LegalShield's limit, not because it was the rate actually charged, is belied by the outlier invoice dated January 27, 2015, which appears to mirror the other invoices in all ways except the rate. If the rate in the invoice

were LegalShield's limit not the actual rate, then the January 27th invoice would include that rate as well, not the higher $410 rate. The inclusion of that higher rate in the January 27th invoice is evidence that the $250 rate in the previous invoices reflected the actual rate charged and not the LegalShield limit.

Lantz's evidence of the $410 rate is minimal. In addition to the January 27th invoice, Lantz provided two declarations by Overhauser, as well as testimony by Overhauser about what Lantz agreed to pay. Bell objects to the consideration of Overhauser's testimony as to what Lantz agreed to pay as hearsay, and in response Lantz has clarified that he is not relying on any testimony to establish a reasonable attorney's fee, but rather is basing his claim solely on the two declarations of Overhauser. Those declarations, however, do not address the rate that Overhauser actually agreed to charge Lantz for his legal services in this case. The declarations merely set forth that Overhauser's "present standard hourly rate for cases of this type" is $410 per hour, and states that he has billed other clients at that rate for the same type of work as in this case. That would tend to prove that Overhauser could charge that amount for cases such as this one, but the proper focus is on what this particular client agreed to pay. In *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 438–39 (7th Cir. 2004), we held that in a copyright case "the best value of the lawyer's services is what the client agrees to pay him," and therefore agreed with the Third Circuit in *Lieb v. Topstone Industries*, 788 F.2d 151, 156 (3d Cir.1986), that the contract between a party and his lawyer places a ceiling on what a court can award the lawyer in such cases. Overhauser's declarations do not address the fees that Lantz agreed to pay it, as opposed to fees charged to other clients for similar services, and are therefore unhelpful.

The evidence in the record therefore provides little support for the $410 figure. The district court never properly analyzed that evidence, however, because it appeared to be unaware of the sealed exhibits produced by Bell. As we have discussed above, that evidence deals a significant, and quite likely fatal, blow to Lantz's argument that he is entitled to an attorney's fee of $410 per hour as opposed to $250 per hour, and therefore a remand is required.

Accordingly, the award of attorney's fees is VACATED and the case REMANDED for further proceedings consistent with this opinion.