In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 15-2343, 15-3735, 15-3731

RICHARD BELL,

*Plaintiff-Appellant,*

*v.*

CAMERON TAYLOR, *et al.,*

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:14-cv-0785, 1:13-cv-0798, — **Tanya W. Pratt**, *Judge.*

_____

ARGUED MAY 20, 2016 — DECIDED JULY 1, 2016

_____

Before FLAUM and MANION, *Circuit Judges*, and ALONSO,
*District Judge.*\*

FLAUM, *Circuit Judge.* Richard Bell sued several defendants
for copyright infringement, alleging that they impermissibly
displayed a photo belonging to Bell on websites promoting

_____

\* The Honorable Jorge L. Alonso, United States District Court for the
Northern District of Illinois, sitting by designation.

their respective businesses. Bell sought damages as well as injunctive and declaratory relief in federal district court. The district court granted summary judgment for defendants, first on damages and later on injunctive and declaratory relief. Bell also filed a second copyright infringement lawsuit against some of the defendants in the same court. The district court granted defendants' motion to dismiss the second case based on res judicata. Bell appeals the grant of summary judgment for defendants in the first case and the grant of defendants' motion to dismiss in the second case. For the reasons that follow, we affirm the judgment of the district court in both cases.

## I. Background

Plaintiff Bell is the undisputed owner of the photograph at the center of this appeal, which depicts the Indianapolis skyline during the day ("the daytime photo"). Bell took the photo in March 2000, published it online in August 2000, and later registered the copyright, which became effective in August 2011. Bell sued defendants (as well as others who are no longer parties to this matter) on June 7, 2011, alleging federal copyright infringement and state law claims for conversion, misrepresentation, and unfair competition. After Bell amended his complaint three times, the district court severed the claims and grouped like defendants together. The case against the defendants described below commenced on May 15, 2013 ("the 2013 Case").

Defendant Cameron Taylor operates a computer business, Taylor Computer Solutions, which he advertises on his website (www.taylorcomputersolutions.com). Bell alleged in his complaint that Taylor and Taylor Computer Solutions (collectively "Taylor") used the daytime photo without authorization between January 2009 and April 2011. However, Bell later

realized that Taylor never downloaded or displayed the day-time photo specified in the complaint; rather, Taylor's website displayed a different photo that Bell owned—one depicting Indianapolis's skyline at *night* ("the nighttime photo"). To correct his error, Bell sought to amend his complaint a fourth time on March 12, 2014—nearly eight months after the July 15, 2013 deadline for filing motions for leave to amend the pleadings. The district court denied his motion, citing undue delay and Bell's carelessness.

Defendant Fred O'Brien and his business, Insurance Concepts, operated a website for six to eight weeks in 2011. Bell alleged that this website displayed the daytime photo without authorization. The website had little to no traffic and generated no business, which led O'Brien to shut the website down in mid-2011.

Defendant Shanna Cheatham is a real estate agent who advertised her services on her website. Bell alleges that Cheatham's website infringed on his copyright of the daytime photo from June 2008 and June 2011. Cheatham's website was designed by Jessica Wilch, who downloaded the daytime photo from an unspecified website. Cheatham removed the photo on June 15, 2011, immediately after she was contacted by Bell. Cheatham has since changed employment and shut the website down.

During discovery, Bell moved to compel the production of defendants' tax returns for every year from 2000 to 2011. Bell hoped the tax returns would show an increase in defendants' profits during the periods of infringement, thus helping him prove his entitlement to indirect profits as damages. Bell also moved to compel the production of a spreadsheet created by Wilch showing Cheatham's website traffic before, during, and

after infringement, along with Wilch's accompanying notes. The district court denied both motions.[1]

On August 26, 2014, the district court granted defendants' motion for summary judgment on the issue of damages and dismissed Bell's case with prejudice. The district court found that Taylor was entitled to summary judgment because Taylor never displayed the daytime photo as Bell alleged in his complaint. As for the other defendants, the court concluded that although Bell had established ownership of the photo, he had failed to prove damages: Bell had not demonstrated the photo's fair market value, nor had he shown that defendants profited from their use of his photo. Finally, the district court found that Bell's state law claims for conversion, misrepresentation, and unfair competition were preempted by federal copyright law.

That same day, the district court purported to enter a "final judgment" in favor of defendants. Bell appealed, and on June 29, 2015, we dismissed the appeal for lack of jurisdiction and remanded the case to the district court. *Bell v. Taylor*, 791 F.3d 745, 746 (7th Cir. 2015). We explained that since the district court had not resolved Bell's claims for injunctive relief, the judgment was not final for purposes of appeal. *Id.* On remand, both parties moved for summary judgment on injunctive and declaratory relief. The district court granted summary judgment in favor of defendants and entered final judgment on December 4, 2015.

---

[1] The district court referred Bell's motion to compel defendants' tax returns to the Honorable Denise K. LaRue, United States Magistrate Judge for the Southern District of Indiana, who denied the motion. The district court affirmed the magistrate judge's decision.

On April 7, 2014, while Bell's motion to file a fourth amended complaint was pending, Bell initiated a second law-suit against Taylor ("the 2014 Case"), asserting the same copyright infringement and state law claims as the 2013 Case, but based on the photo Taylor actually posted: the nighttime photo. On June 12, 2015, the district court granted Taylor's motion to dismiss the 2014 Case based on res judicata. Following the remand of the 2013 Case, Bell moved to amend judgment of the 2014 Case, arguing that res judicata has been misapplied because there was no prior final judgment. The district court denied this motion on December 8, 2015.

Bell appeals, challenging the grant of summary judgment for defendants in the 2013 Case, the grant of defendants' motion to dismiss the 2014 Case based on res judicata, and the denial of various motions.

## II. Discussion

### A. Taylor and Taylor Solutions

We begin our analysis with a discussion of defendants Taylor and Taylor Solutions (collectively "Taylor"). Bell argues that the district court erred by granting summary judgment for Taylor in the 2013 Case, denying Bell's motion for leave to amend his complaint a fourth time, and dismissing the 2014 Case against Taylor based on res judicata.

#### 1. Summary Judgment

We review de novo the district court's grant of summary judgment, construing all facts in the light most favorable to Bell, the nonmoving party, and drawing all reasonable inferences in Bell's favor. *Williams v. Brooks*, 809 F.3d 936, 941 (7th

Cir. 2016). Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In the 2013 Case, Bell's third amended complaint accused Taylor of infringing on his copyright of the daytime photo. Taylor answered the complaint and denied posting the daytime photo on his website. The district court granted summary judgment for Taylor, stating that "Bell admits that [Taylor] did not use or infringe upon the copyright of the [daytime] Photo," as alleged in the complaint. As explained above, Taylor had posted Bell's nighttime photo, not the daytime photo. On appeal, Bell argues that Taylor should have notified him that he identified the wrong photo in his complaint. Bell contends that Taylor did not comply with Federal Rule of Civil Procedure 8(b), which states that "[i]n responding to a pleading, a party must … state in short and plain terms its defenses to each claim asserted against it[.]" Bell attempts to construe Taylor's argument that he never infringed on Bell's copyright of the daytime photo as an affirmative defense, and therefore contends that Taylor waived this "wrong photo defense" by not pleading it in his answer.

Bell misunderstands both the definition of "affirmative defense" and a defendant's obligations at the pleading stage of civil litigation. While Rule 8(c) directs parties to raise affirmative defenses in the pleadings, Taylor did not assert an affirmative defense. An affirmative defense "limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case." *Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n.9 (7th Cir. 2005). In other words, an affirmative defense is "[a] defendant's assertion of facts and arguments that, if

true, will defeat the plaintiff's … claim, even if all the allegations in the complaint are true." *Defense*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 401 (7th Cir. 2014). In this case, Bell did not establish a prima facie case against Taylor, and Taylor's answer did not assume that the allegations of Bell's complaint were true. Rather, Taylor stated in his answer that he did not do what Bell accuses him of doing. This is not an affirmative defense but simply a denial of Bell's allegations.

Additionally, Taylor fulfilled his duties under Rule 8(b) by stating that he never used the photo alleged in the complaint. We have explained that "[t]he purpose of a responsive pleading is to put everyone on notice of what the defendant admits and what [he] intends to contest." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014). Here, Taylor gave Bell adequate notice that he had not used the daytime photo. Taylor was not required to do more to inform Bell of his own error. *Cf. Bell v. Lantz*, No. 15-2341, 2016 WL 3361557, at *2 (7th Cir. June 17, 2016) (noting in one of Bell's other copyright infringement suits that "Bell's argument [that the defendant was obligated to do more than deny Bell's allegations in his answer to inform Bell that he had sued the wrong defendant] comes very close in this case to imposing an affirmative burden on the defendant to disprove plaintiff's case—an argument which lacks any support in precedent."). Therefore, we affirm the district court's grant of summary judgment in Taylor's favor.

### 2. *Motion For Leave to File a Fourth Amended Complaint*

Next, Bell argues that the district court erred by not granting him leave to amend his complaint several months after the deadline for amending pleadings. We review the denial of a

motion for leave to amend for an abuse of discretion. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 524 (7th Cir. 2015). Under Federal Rule of Civil Procedure 15(a)(2), a court should grant leave to amend a pleading "when justice so requires." However, the court "need not allow an amendment when there is undue delay [or] undue prejudice to the opposing party …." *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

The district court found that Bell was not diligent in discovering his mistake regarding which photo Taylor had actually posted. During discovery in April 2013, Taylor sent Bell a copy of the nighttime photo that he had posted and stated in his interrogatory answers that he had never used the daytime photo. Thus, the district court found that Bell was on notice that Taylor had used the nighttime photo, not the daytime photo identified in the complaint. Yet Bell failed to act on this information until March 12, 2014, well after the July 15, 2013 deadline for amending pleadings had passed. Further, the court pointed out that Bell filed his motion to amend just four weeks prior to the dispositive motions deadlines and at the close of discovery. Thus, granting Bell's motion would cause further delay and prejudice to defendants by affecting the summary judgment schedule and potentially creating a need to reopen discovery. For these reasons, the district court denied Bell's motion to amend.

On appeal, Bell argues that there was no undue delay on his behalf. He contends that it was Taylor who delayed the proceedings by not being forthcoming about why he was denying Bell's allegations. This argument fails because Taylor gave Bell adequate notice that he had not used the daytime

photo[2] and was not required to do more to help Bell correct his error. *See Edelman*, 754 F.3d at 395. Thus, we agree with the district court that Bell could have moved for leave to amend well before the deadline but failed to do so. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming district court's denial of plaintiff's motion for leave to file a second amended complaint "late in the game," in part because plaintiff based his request on information available to plaintiff "long before he sought leave to amend").

Moreover, we have acknowledged that when a district court denies a motion for leave to amend filed after the deadline, "the generous standard in Rule 15(a)(2) for allowing amendments 'is in some tension with' Rule 16(b)(4), which governs scheduling orders and requires a showing of good cause to justify modifying time limits." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014*), cert. denied*, 135 S. Ct. 286 (2014) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). In this situation, the court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Id.* (citation and internal quotation marks omitted).

---

[2] In fact, the record shows that Bell was aware that Taylor posted the nighttime photo as early as April 2011, several months before Bell even filed this suit. In an April 13, 2011 email, Taylor said to Bell:

> Ok, well I shall take down the photo and then go take my own photo of the Indianapolis skyline *at night* …. As for your website I see you have several images of Indianapolis *at night* and the same photo listed for sale ….

(emphasis added).

In *Adams*, we upheld the denial of a motion for leave to amend filed six months after the deadline where the plaintiffs had not demonstrated good cause. *Id.* Similarly, Bell has not shown good cause for relief from the deadline, which passed nearly eight months before his attempt to amend his complaint a fourth time. Thus, the district court did not abuse its discretion in denying Bell's request to amend his complaint.

### 3. Res Judicata

Bell's final argument involving Taylor is that the district court erred in dismissing Bell's second lawsuit—the 2014 Case—against Taylor based on res judicata. We review de novo a dismissal based on res judicata. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 974 (7th Cir. 2016). Res judicata, or claim preclusion, bars any claims that were litigated or could have been litigated in a previous action when three requirements are met: "(1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997) (internal citation and quotation marks omitted).

We agree with the district court that all of the requirements for res judicata are present in this case. There is an identity of the causes of action because Bell's two lawsuits against Taylor arise out of "a common core of operative facts"—namely, Taylor's use of the nighttime photo, which Bell mistakenly identified as the daytime photo. *Id.* (internal quotation marks omitted); *see also Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011) ("Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations." (citation and internal quotation marks omitted)).

Bell argues that the 2013 Case did not make any determination regarding the nighttime photo and that he did not have a full and fair opportunity to litigate the issue of the nighttime photo in the 2013 Case. These arguments fail because Bell had an opportunity to litigate infringement of the nighttime photo in the 2013 Case, but he did not do so. *See Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) ("[R]es judicata bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." (citation and internal quotation marks omitted)). Bell attempted to amend his complaint to include the nighttime photo, but the district court appropriately denied this motion for the reasons discussed above. Bell cannot use a second lawsuit against Taylor to take another bite at the apple. *See Roboserve*, 121 F.3d at 1035 ("Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or lost." (citation and internal quotation marks omitted)).

It is undisputed that the parties are the same in the two cases, and thus we turn to the third res judicata requirement of finality. Bell argues that the judgment in the 2013 Case was not final when the district court invoked res judicata in the 2014 Case. Bell correctly points out that in Bell's initial appeal, we held that the district court's first summary judgment ruling was not final for purposes of appeal because the district court had only ruled on damages and had not yet ruled on injunctive and declaratory relief. *Bell v. Taylor*, 791 F.3d 745, 746 (7th Cir. 2015). However, our holding in Bell's first appeal is not dispositive, as finality for purposes of appeal is not the same as finality for purposes of preclusion. *See* 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4432 (2d ed. 2016).

This Circuit has adopted the Second Circuit's relaxed concept of finality, at least for purposes of collateral estoppel, or issue preclusion. *See Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979), *cert. denied*, 444 U.S. 1102 (1980) ("To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. 'Finality' in the sense of [the finality required for appellate jurisdiction] is not required."); *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962) ("Whether a judgment, not 'final' in the sense of [finality for appeal under] 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review."). Accordingly, we have held that a judgment can have the requisite finality for res judicata purposes even if it is not final for purposes of appeal. *See Alexander v. Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985). However, as we acknowledged in *EEOC v. Harris Chernin, Inc.*, there is tension in our case law regarding whether this relaxed concept of finality should in fact be extended to res judicata or if it should be limited to collateral estoppel. 10 F.3d 1286, 1290 n.5 (7th Cir. 1993); *see also* Wright & Miller § 4434 n.29.

In the case at hand, the district court's grant of summary judgment for Taylor in the 2013 Case was final for purposes of res judicata. Although the district court applied res judicata before it ruled on injunctive and declaratory relief as to the other defendants, the district court's rulings pertaining to Taylor were final. There were no remaining claims against Taylor after the district court issued its first summary judgment

opinion. And the court's grant of summary judgment for Taylor was in no way affected by the court's later rulings on injunctive and declaratory relief as to the other defendants.

Further, our decision to affirm the district court on this issue aligns with the goals of res judicata. We have explained that res judicata "promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). After Bell's initial appeal, he raised the same arguments against res judicata before the district court in a motion to amend judgment of the 2014 Case, and the district court appropriately denied his motion. The court explained that it had ruled on all claims and properly entered final judgment in the 2013 Case and that its grant of summary judgment for Taylor remained unchanged.[3] Thus, the district court found that allowing Bell to take advantage of the district court's initial oversight in entering final judgment before ruling on injunctive and declaratory relief would be unfairly prejudicial to Taylor, especially because the oversight had since been addressed.

We agree. Reversing the district court's dismissal of the 2014 Case would have no practical effect. It is undisputed that at this point, the district court has entered final judgment for defendants. Thus, even if we were to remand the 2014 Case to the district court, the court could simply reissue the same opinion dismissing the 2014 Case based on res judicata. We

---

[3] The district court denied Bell's motion on December 8, 2015, four days after the district court ruled on Bell's claims for injunctive and declaratory relief and entered final judgment for defendants.

decline Bell's suggestion that we should use the limited re-
sources of the judiciary in this manner. Therefore, we affirm
the district court's dismissal of the 2014 Case.

### B. O'Brien, Insurance Concepts, and Cheatham

Turning to the remaining defendants, Bell argues that the
district court erred by granting summary judgment for
O'Brien, Insurance Concepts, and Cheatham on the issue of
damages; denying Bell's motion to compel discovery of de-
fendants' tax returns and the spreadsheet of Cheatham's web-
site traffic; and denying Bell's request for declaratory relief.

### 1. *Damages*

The district court found that Bell established ownership of
the copyright of the daytime photo and that O'Brien, Insur-
ance Concepts, and Cheatham had infringed on Bell's copy-
right by displaying the photo on their respective websites. *See
JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007)
("To establish copyright infringement, one must prove two el-
ements: '(1) ownership of a valid copyright, and (2) copying
of constituent elements of the work that are original.'" (quot-
ing *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 US. 340, 361
(1991))). Nonetheless, the district court concluded that Bell
could not prove damages.

"The Copyright Act permits a copyright owner to recover
actual damages suffered as a result of the infringing activity
and any profits of the infringer resulting from the infringe-
ment that are not otherwise taken into account in calculating
actual damages." *McRoberts Software, Inc. v. Media 100, Inc.*,
329 F.3d 557, 566 (7th Cir. 2003). Actual damages are "usually
determined by the loss in the fair market value of the copy-
right, measured by the profits lost due to the infringement or

by the value of the use of the copyrighted work to the in-fringer." *Id.* We have said that "[i]t is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual dam-ages, provided the amount is not based on 'undue specula-tion.'" *Id.* (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)).

Bell attempts to prove damages by establishing the fair market value of the daytime photo, as demonstrated by the licensing fee defendants should have paid Bell for use of the photo. To prove the value of the hypothetical license fee, Bell submitted an affidavit stating:

> Plaintiff has sold for several years and currently sells the perpetual commercial rights to display digital download version [sic] of all his photos … for use on the web for $200.
>
> …
>
> Plaintiff believes that the price of $200 is fair and reasonable and represents the fair market value for the perpetual commercial rights to publish the photos.

Additionally, Bell cited as evidence of damages a webpage showing that the advertised price for a license to download the daytime photo is $200. The district court deemed Bell's af-fidavit insufficient to establish fair market value, stating: "[T]here is no evidence other than Mr. Bell's unsupported as-sertion that he has sold the rights to the Indianapolis Photo for years at a price of $200.00. Without any support or evi-dence, this value is based on undue speculation."

On appeal, Bell argues that summary judgment was improper because his affidavit and website price listing create a genuine dispute of material fact as to whether he suffered damages from the infringement. He contends that the district court erred by making a credibility determination when it characterized Bell's affidavit as an "unsupported assertion."

Bell's argument fails for several reasons. Bell does not aver in his affidavit that he has ever actually had a buyer willing to pay $200 for his photo. Instead, he states that he "believes that the price of $200 is fair and reasonable and represents the fair market value …." Without additional evidence, Bell's subjective belief as to the fair market value of his photo is not enough to prove damages. *See On Davis*, 246 F.3d at 166 ("The question is not what the owner would have charged, but rather what is the fair market value.").

Likewise, the price that Bell listed on his website is not sufficiently concrete to show the fair market value of his photo. *See Dash v. Mayweather*, 731 F.3d 303, 318 (4th Cir. 2013) ("To survive summary judgment of an actual damages claim, a copyright holder must show that the thing taken had a fair market value. Evidence of the owner's prior sale or licensing of copyrighted work will satisfy this burden when it is sufficiently concrete." (internal citations and quotation marks omitted)). Despite the fact that the district court granted defendants' motion to compel Bell's sales records, Bell never produced any evidence supporting his assertion that he has sold the photo for $200.[4]

---

[4] In fact, Bell attempted to obfuscate the issue of damages by objecting to defendants' motion to compel his sales records, arguing that the sales records were not relevant and that his financial records were confidential,

Finally, Bell argues that defendants did not present any evidence contradicting Bell's affidavit or price listing. However, it was Bell's burden to prove damages, and defendants were not required to produce any evidence showing a lack of damages. *See McRoberts Software*, 329 F.3d at 568. Thus, the district court did not err in granting summary judgment for O'Brien, Insurance Concepts, and Cheatham on the issue of damages.

### 2. Motion to Compel Discovery

Next, Bell argues that the district court erred in denying his motions to compel discovery of defendants' tax returns and the spreadsheet of Cheatham's website traffic. We review the district court's denial of a motion to compel for an abuse of discretion. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 644 (7th Cir. 2011).

The Copyright Act permits a plaintiff to recover an infringer's profits that are "attributable to the infringement …." 17 U.S.C. § 504(b). The Act specifies that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* In other words, a plaintiff must show a causal nexus between the infringement and the gross revenues. *See Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your

---

voluminous, and burdensome to produce. After the district court granted defendants' motion to compel, Bell still did not produce any sales records; rather, he moved for a protective order, which the district court denied.

case for an award of infringer's profits."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("[T]he copyright claimant must first show a causal nexus between the infringement and the gross revenue ….").

The district court agreed with the magistrate judge who denied Bell's motion to compel defendants' tax returns, finding that the request for eleven years of tax returns was overbroad and that Bell's assertion that the tax returns would establish wrongful profits was "nothing more than a bare allegation." The court reasoned that even if the tax returns showed an increase in profits during the time the photo appeared on the defendants' websites, Bell could not establish a nexus between the increased profits and the use of his photo. The district court also denied Bell's motion to compel discovery of Cheatham's spreadsheet of website traffic.

On appeal, Bell focuses on Cheatham's tax returns and the spreadsheet related to her website traffic, since O'Brien and his Insurance Concepts website generated no business. Bell alleges that "there is significant evidence in the record that creates a substantial likelihood that Bell would establish a causal nexus."

However, Bell does not develop his argument to demonstrate how the tax returns would allow him to develop a causal nexus, even if they did reflect an increase in profits during the period of infringement. Cheatham used Bell's daytime photo of the Indianapolis skyline on her website advertising her services as a real estate agent. There is no evidence suggesting that Cheatham attracted more clients because of Bell's photo. *See Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, 532 F.3d 620, 623 (7th Cir. 2008) ("It is doubtful that profits from the sale of noninfringing goods or services … can be attributed to

a copyright infringement with enough confidence to support a judgment."); *cf. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) (causal nexus between profits and infringement demonstrated by casino's annual report stating that the operations of the casino were "materially enhanced" by the popularity of the infringing stage show (internal quotation marks omitted)). Thus, the district court did not abuse its discretion in denying Bell's motion to compel defendants' tax returns.

Nor did the district court abuse its discretion in denying Bell's motion to compel the spreadsheet of Cheatham's website traffic. As the district court acknowledged, Cheatham had already provided Bell with documents showing the same information contained in the spreadsheet—specifically, seventy-two monthly web reports for Cheatham's website, encompassing pre- and post-infringement periods. Thus, the spreadsheet would be duplicative. *See* Fed. R. Civ. P. 26(b)(2) ("[T]he court must limit the frequency or extent of discovery otherwise allowed … [if] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive …."); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). For these reasons, we affirm the district court's denial of Bell's motions to compel discovery.

### 3. *Declaratory Relief*

Finally, Bell argues that the district court erred in granting summary judgment for defendants on the issue of declaratory relief and denying his request for a declaration that he is the valid owner of the copyright of the daytime photo. "The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts, in their discretion, to render declaratory judgments

only where there exists an actual controversy ….” *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (citation and internal quotation marks omitted). In deciding whether there is an actual controversy, we focus on whether the facts alleged “show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation and internal quotation marks omitted).

The district court found that there was no actual controversy between Bell and O’Brien, Insurance Concepts, and Cheatham since defendants were no longer infringing on Bell’s copyright. The court stated, “[t]hese [d]efendants have no desire to interact with Bell or use his photographs in the future.” The district court also noted that it had already found in its first summary judgment opinion that Bell owned the copyright.

We agree with the district court. As the court explained, defendants had long since removed Bell’s photo from their websites. In fact, the websites no longer exist. Thus, even if a controversy had existed at the time Bell filed suit, there is currently no actual controversy of “sufficient immediacy and reality to warrant the issuance of a declaratory judgment.” *MedImmune*, 549 U.S. at 127. Therefore, the district court did not err in granting summary judgment for defendants on the issue of declaratory relief.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgments of the district court.