Ronald D. ROUTH, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 90–35536.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 8, 1991.*

Decided Aug. 6, 1991.

Dale J. Walther, Clark, Walther & Flanigan, Anchorage, Alaska, for plaintiff-appellant.

James G. Touhey, Jr., Trial Atty., Torts Branch, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WIGGINS, BRUNETTI and NELSON, Circuit Judges.

THOMAS G. NELSON, Circuit Judge:

In this Federal Tort Claims Act case, we hold that a contracting officer's failure to require a particular piece of safety equipment on a contractor's machinery is not a discretionary function shielded from tort liability. The judgment dismissing the complaint for lack of subject matter jurisdiction is reversed.

I

Background.

The United States Forest Service (United States) awarded Coastal, Inc. a contract on a road clearing project in Alaska. In September, 1985, appellee Ronald Routh was operating a backhoe for Coastal. The backhoe did not have a falling object protection system (FOPS) and Routh was injured when trees he was maneuvering with the backhoe fell onto the machine.

In September, 1988, Routh filed a complaint against the United States under the Federal Tort Claims Act (FTCA) alleging that the United States was negligent in its supervision of the project. Specifically, Routh maintains that the contracting officers (United States Forest Service agents) were aware that the backhoe was not equipped with a FOPS but failed to take necessary steps to require the contractor to remedy the deficiency.

The United States filed a motion to dismiss the complaint on the grounds that: (1)

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

the claim was barred under the FTCA's discretionary function exception; and (2) the claim was not actionable under Alaska law. The district court granted the United States' motion to dismiss.[1] Routh appeals.

## II

### Standard of Review.

We review independently the district court's determination of subject matter jurisdiction pursuant to the discretionary function exception. *Kennewick Irrigation District v. United States,* 880 F.2d 1018, 1021 (9th Cir.1989).[2]

## III

### The Discretionary Function Exception.

The Federal Tort Claims Act allows civil actions to be filed against the United States for damages for personal injuries in situations where a private person would be liable under the law of the place where the act or omission causing the injuries occurred. 28 U.S.C. § 1346(b). However, the FTCA limits the United States' waiver of sovereign immunity. The discretionary function exception excludes from the waiver "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception marks the boundary between Congress' willingness to expose the United States to tort liability and its desire to protect certain governmental activities from exposure to suit by private individuals. *Kennewick,* 880 F.2d at 1021.

The Federal Acquisition Regulations (*see* Title 48, Chapter 1, of the Code of Federal Regulations) require that certain standard clauses be incorporated into all fixed price construction contracts where the contract price exceeds small purchase limitations. These required provisions have the force and effect of law. *See, e.g., Paul v. United States,* 371 U.S. 245, 255, 83 S.Ct. 426, 433, 9 L.Ed.2d 292 (1963). Among such clauses is the accident prevention clause, which provides, in pertinent part:

(a) In performing this contract, the Contractor shall provide for protecting the lives and health of employees and other persons; preventing damage to property, materials, supplies, and equipment; and avoiding work interruptions.

. . . .

(d) The Contracting Officer shall notify the Contractor of any noncompliance with these requirements and of the corrective action required. This notice, when delivered to the Contractor or the Contractor's representative at the site of the work, shall be deemed sufficient notice of the noncompliance and corrective action required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to take corrective action promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken.

48 C.F.R. Ch. 1, § 52.236–13. The United States admits that even though these provisions were inadvertently omitted from the

---

1. The district court did not specify the reason for the dismissal in its order, nor did the parties provide us with a transcript of the hearing on the motion which might tell us the district court's basis for dismissal. The parties' briefs indicate that the district court dismissed on the ground that the court lacked subject matter jurisdiction due to application of the discretionary function exception.

2. Since *Kennewick* is the most extensive of this court's recent cases discussing the discretionary function exception, references will be limited to *Kennewick,* rather than going behind *Kennewick* to the underlying decisions of the United States Supreme Court discussed at some length therein. *See Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). *See also United States v. Gaubert,* — U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Fishback and Killefer, The Discretionary Function Exception to the Federal Tort Claims Act: Dalehite to Varig to Berkovitz, 25 IDAHO LAW REVIEW 291 (1989).

contract documents they were incorporated by operation of law.

Under *Kennewick*, this court must apply a two step analysis in determining whether the discretionary function exception applies. We must first consider whether the action is a matter of choice for the acting employee. *Kennewick*, 880 F.2d at 1025. The discretionary function exception will not apply where federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In other words, the discretionary function exception is not applicable if there is no discretion. If the challenged conduct does involve an element of judgment, the second step is to determine whether that judgment is of the kind that the discretionary function exception was designed to shield. To be shielded the judgment must be "grounded in social, economic and political policy." *Id.*

### A. Was the conduct discretionary?

The complaint, supported by Routh's affidavit, alleges that the government's representatives and employees were aware of the fact that the backhoe lacked a FOPS and that those representatives had promised Routh they would require the contractor to correct this deficiency. Clearly, if nothing else, the contract required that if the contracting officer became aware of the contractor's noncompliance with the safety provisions of paragraph (a), the contracting officer was to notify the contractor that corrective action was needed.

■ Negligence is irrelevant to the discretionary function inquiry. *Kennewick*, 880 F.2d at 1029. Accordingly, we intimate no view on whether lack of a FOPS was a deviation from the contractor's duty under the contract. Our focus in this analysis is merely whether the United States, by inserting this language into the contract, created a nondiscretionary duty on the contracting officer to notify the contractor of a failure to provide for the protection and health of the contractor's employees.

As Routh points out, one other federal court has ruled that similar mandatory language within a contract, such as we have here, precludes government inspectors'

conduct from being within the discretionary function exception. *Pelham v. United States*, 661 F.Supp. 1063 (D.N.J.1987). The district judge in *Pelham* held that:

It is true as the government contends that the contractor bears responsibility for complying with the contract's safety provisions. However, the contract unequivocally states that "[t]he Contracting Officer *will* notify the contractor of noncompliance with these requirements." ... Thus, through use of the word "will", the contract clearly accords the contracting officer with oversight responsibilities over the contractor's final compliance obligation. While the contracting officer's implementation of an inspection program for detecting safety breaches may be discretionary, once the officer suspects a safety deficiency, he or she does not have discretion as to whether or not act upon it.

661 F.Supp. at 1069 (citation omitted; emphasis original).

Similarly, in this case the discretion was removed from the contracting officer in notifying the contractor of noncompliance with the safety requirements by the word "shall" in paragraph (d) of the accident prevention clause. The government undertook the obligation to oversee the safety of the work site by reserving to itself the responsibility to notify the contractor of noncompliance with its duties under the contract. *Kennewick* holds that discretion may be removed "if the government incorporates specific safety standards in a contract which imposes duties on the government's agent." *Kennewick*, 880 F.2d at 1026, *citing Camozzi v. Roland/Miller & Hope Consulting Group*, 866 F.2d 287, 290 (9th Cir.1989). Specific and mandatory safety standards were not incorporated by section (a) of the accident prevention clause. Routh has not demonstrated that any such standards were otherwise applicable to the job or that the lack of a FOPS violated any such standards. Therefore, since discretion did exist in determining whether a FOPS was a needed safety provision, the discretionary function exception

applies if the contracting officer's judgment involved a policy decision.

### B. Was the decision a policy decision?

The United States argues that the discretionary function in this case is not found in the contracting officer's duty to notify the contractor of noncompliance with safety procedures, but in the ability to issue a stop-work order. The United States points out Routh's complaint speaks to the provision in the contract which gives the contracting officer the ability to stop work unless corrective action is taken promptly. The United States argues the clause deliberately delegates an element of judgment to the contracting officer.

This argument leads to consideration of the second step in the analysis: to determine whether that judgment is of the kind that the discretionary function exception was designed to shield. To be shielded, the judgment must be grounded in social, economic and political policy. *Kennewick*, 880 F.2d at 1025. The United States contends that a contracting officer must balance the policy objectives of promoting work place safety against practical considerations, most notably, the disruptive impact a stop-work order would have on government operations.

In *Kennewick*, the irrigation district brought a claim against the United States for damages arising out of breaks in an irrigation canal designed and constructed by the United States Bureau of Reclamation. The breaks were caused by a phenomenon called "piping" in which a hole in the canal bank, possibly caused by a rodent, allowed water to flow through causing erosion and eventually resulting in a break in the canal. While this court in *Kennewick* concluded that the design of canal was a matter shielded by the discretionary function exception, the construction of the canal was not so shielded. The court reasoned that the contracting officer's discretion during construction was not based on policy judgments but on technical, scientific, or engineering considerations. *Kennewick*, 880 F.2d at 1031. The court noted that virtually all government actions affect costs since the actions themselves require resources. The court concluded that the contracting officer's on-site decisions were not of the nature and quality the Congress intended to shield in tort liability because they were not based on public policy. *Id.*

Similarly, in this case the contracting officer's decision whether or not a given situation created a safety hazard in violation of the safety provisions of the contract was not a public policy decision. The government's argument that the contracting officer must weigh the effects of shutting the job down versus the benefits of the safety measure is not convincing. The government's position, carried to its logical extreme, would allow the undercutting of a policy decision to require a safe workplace by purely economic considerations not supported in the record. In this case, while it may well have disrupted the contractor's work to put FOPS on its equipment, the contractor had a fixed price contract, presumably with a fixed completion date. Implementation of safety measures required for the protection of its employees would have been a cost to the contractor, but not demonstrably to the United States. Neither are we persuaded that a possible delay occasioned by the stop-work order is of appreciable economic concern to the United States.[3]

The facts of this case are distinguishable from the recent Eighth Circuit decision *Tracor/MBA, Inc. v. United States*, 933 F.2d 663 (8th Cir.1991), cited by the United States. There, the United States had adopted regulations which required manufacturers of explosive devices, such as Tracor, to comply with safety standards in an extensive safety manual. The government, by contract, was required "to make sure" that Tracor fulfilled its quality, quantity

---

**3.** The United States' argument in this regard raises some serious concerns. It would be difficult to approve of a contracting officer's engaging in a cost-benefit analysis quantifying, by a dollar amount, the cost of risk to human life or limb when deciding whether to issue stop-work orders.

and safety requirements. *Tracor*, 933 F.2d at 664.

The government inspectors had a forty-seven step procedures review checklist for safety compliance. Tracor did not challenge the adequacy of the checklist, but contended that the actual inspections were negligently done. The court held that the inspectors' decisions when checking ventilation and flame-retardancy of clothing were discretionary functions within the discretion contemplated by the regulations. The court said:

> [A]ll of the points on the checklist upon which Tracor relies merely state a very general course of conduct for the inspectors to follow. For example, the checklist tells the inspector to check the ventilation every 30 days. Tracor does not argue that the inspectors failed to check the ventilation. Instead, Tracor contends that the inspectors performed an inadequate inspection of the ventilation. The checklist, however, prescribed no procedures for testing the ventilation and did not specify what action an inspector should take if he found inadequate ventilation to exist. Likewise, the checklist did not specifically tell the inspector how to check the flame-retardancy of clothing. The method of ensuring the flame-retardancy of the clothing, like testing the ventilation, was left to the inspector's choice. Accordingly, the inspector's conduct was discretionary and protected by the discretionary function exception.

*Id.* at 667.

Here, the government did not establish a detailed structure of safety requirements for the contractor to follow, with specific discretion left to government employees in monitoring contractor compliance. There is no comprehensive regulatory framework from which we can presume, under *United States v. Gaubert*, — U.S. —, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), that "a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." 111 S.Ct. at 1274. *See also Foster v. United States*, 923 F.2d 765 (9th Cir.1991). In *Tracor*, the safety manual

presumably took into account necessary public policy trade-offs among cost of manufacture, difficulties in maintenance, risk to handlers, reliability of function and other factors relevant to the manufacture of military weapons and defensive systems. No comparable regulations have been shown to exist here from which we can conclude that the government agents' conduct was within the ambit of the political, social and economic considerations embodied in the regulations. While we have held that issuance of a stop-work order is discretionary (see part III, A), we conclude that the contracting officer's on-site decisions here were not of the nature and quality that Congress intended to shield from tort liability. *See Kennewick*, 880 F.2d at 1031.

## IV

### Vicarious Liability.

The United States argues that it cannot be held liable vicariously for the acts and omissions of its independent contractors. Accepting this contention by the government as accurate, it is clear from the complaint that Routh has not asserted that the United States is vicariously liable for the actions of Routh's employer. For this reason, the government's contention is not germane to the case.

## V

### Alaska State Law.

The substantive law of Alaska controls tort law issues in this case, since the accident happened in Alaska. 28 U.S.C. § 1346(b). The United States urges us to affirm the district court's order to dismiss "on the alternative ground" that Routh's complaint fails to state a claim under Alaska law. Since the district court apparently did not address this issue, we decline the government's invitation to do so, leaving the question for the district court on remand.

## CONCLUSION

For the reasons stated, the district court erred in dismissing Routh's complaint. Accordingly, the judgment dismissing the

complaint is REVERSED and the case RE-MANDED to the district court.