**Yvonne D. ZIGLER, Administratrix of the Estate of Brian L. Zigler, Deceased, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–3796.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1991.

Decided Jan. 17, 1992.

As Amended Jan. 30, 1992.

James L. Crawford, Effner, Wagner & Crawford, Terre Haute, Ind. (argued), for plaintiff-appellant.

Gerald A. Coraz, Asst. U.S. Atty., Deborah J. Daniels, U.S. Atty., Thomas E. Kieper, Asst. U.S. Atty. (argued) Indianapolis, Ind., for defendant-appellee.

Before COFFEY, and EASTERBROOK, Circuit Judges, and MORAN, Chief District Judge.*

MORAN, Chief District Judge.

Brian L. Zigler was a young man when he died on November 7, 1984, in a tragic construction accident. For his family his death came many many years too early. For the purposes of this Federal Tort Claims Act case his death came, unfortunately, two months too early. The trial court found that the decedent's negligence was a contributory factor in the accident. That finding is not clearly erroneous. And, since Indiana did not adopt a comparative fault statute until January 1, 1985, Ind. Code § 34-4-33-1 *et seq.*, that contributory fault bars recovery. We affirm.

At the time of his death Zigler was employed as a day laborer by Able Associated Enterprises, Inc. ("Able"), a contractor doing remodeling work at the Crane Naval Weapons Support Center ("Crane") in Crane, Indiana. The contract between Able and the United States left performance of the contract, including compliance with safety requirements, primarily up to Able, but it also provided that the "Contracting Officer will notify the Contractor" of noncompliance with safety requirements and authorized the Contracting Officer to stop the work if prompt corrective action was not taken.

The project was, essentially, the construction of a three-story building within an existing building. By November 7, 1984, a third floor concrete deck was in place. Almost three weeks earlier the responsible government officer had noted that no barrier was installed across the third floor deck and directed the contractor to install a barrier. The contractor stretched a single rope across the entire edge of the third floor, with one pole in the center as a support. Upon being advised the following day that the barrier was unsatisfactory, the contractor then welded stanchions, about ten feet apart, along the edge, and strung a rope about waist high along the stanchions. That barrier did not conform to government safety requirements, but the government officer did not require anything further. On November 7, 1984, Zigler, while operating a core drilling machine, was thrown into the rope barrier, slipped beneath it and fell twenty-two feet to his death on the concrete floor below. The trial court concluded that the discretionary function exception to the Federal Tort Claims Act did not exempt the government from liability, that the government's negligence was a proximate cause of the accident but that the decedent had himself been contributorily negligent, and because that negligence was also a proximate cause of the accident his estate could not recover.

■ The government contends that this action is indeed barred by the discretionary function exception, but we do not reach that issue because plaintiff cannot prevail in any event. Because the statute, 28 U.S.C. § 2680(a), does not waive sovereign immunity with respect to discretionary function claims, the trial court, at least

---

* The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

conceptually, lacked subject matter jurisdiction in the event that the government's conduct here involved the exercise of a discretionary function. Subject matter jurisdiction is ordinarily a threshold issue, but under the Federal Tort Claims Act the discretionary function exception is shorthand for invoking a judicial responsibility for determining the scope of governmental accountability for its conduct. Whether or not the government has a legal duty to a plaintiff depends on the circumstances, an often fact-intensive inquiry no different from the determination of whether or not it exercised reasonable care. *See Allen v. United States*, 527 F.Supp. 476 (D.Utah 1981); Kratzke, *The Convergence of the Discretionary Function Exception to the Federal Tort Claims Act with Limitations of Liability in Common Law Negligence*, 60 St. John's L.Rev. 221 (1986). We see no reason why we necessarily must determine that issue first, or at all, if another issue is dispositive. We also note that on more than one occasion federal courts have ruled that contractual oversight provisions similar to those here have not shielded the government from liability. *Routh v. United States*, 941 F.2d 853 (9th Cir.1991).

■ We turn then to the evidence in the record which led to the determination that Zigler was contributorily negligent. That is a determination we can reject only if, in the light of the evidence most favorable to the defendant, it is clearly erroneous. And it is not.

The accident happened while Zigler was operating a core drilling machine. A core drilling machine, which is rather similar in appearance and operation to a drill press, is a specialized machine used to drill large holes in concrete. The decedent was an experienced construction worker but he was unfamiliar with the core driller. His supervisor asked him if he knew how to operate it, he replied that he did, and then he looked around for a knowledgeable co-worker who could help him operate the equipment. The co-worker he found had but limited experience—he had used the core driller once before, the previous day.

The core driller is mounted on a stand and has a spigot for attachment to a hose, so as to provide a flow of water to the bit. The stand should be secured by being bolted to the floor, by a vacuum pad or by a jack screw to the ceiling. The core driller is, however, often, perhaps even customarily, used without the stand being secured. The flow of water helps clear the bit of concrete chips and powder created by the drilling, thus lessening the possibility that the bit will jam, and it cools the bit. If the bit jams, the drill may stop, the clutch may slip or, as what happened here, the core driller, including the stand, may twist.

The two men drilled two holes without major incident. Both stood on the stand with one operating the drill while the other poured water from a can into the spigot when the bit showed a tendency to jam. They did not connect a hose, none being readily available. The third hole was eight inches from the edge of the deck. Neither man was wearing a harness with lifeline. That equipment was available but no hook-up point was readily accessible. The co-worker was providing water on occasion and Zigler was operating the driller when the bit jammed. The core driller rotated and Zigler went off the stand and over the edge.

Plaintiff argues that the trial court articulated the proper standard for contributory negligence under Indiana law, failure of a person to exercise that degree of care and caution for his own safety which an ordinary, reasonable and prudent person in similar circumstances would exercise, but then failed to follow that standard. She contends that Zigler's conduct was viewed from the perspective of persons with considerable experience in operating core drillers, not from the perspective of a worker who had never used the machine before. If the trial court had determined that the decedent should have known that he had to anchor the core driller, that argument would be more persuasive. The core driller was often used, indeed demonstrated at trade shows, without being anchored. Zigler had no reason to even know about vacuum pad accessories. But that is not

what the trial court determined. What the court concluded was that one in Zigler's position either would know or should have recognized that he did not know how to operate the equipment, that he was operating a machine with a powerful rotational thrust within eight inches of a twenty-two foot drop to a concrete floor, that the rope barrier was wholly inadequate, that a proper flow of water was not being directed to the bit, that the bit would bind from time to time, and that when the bit bound without the breaker tripping or the clutch slipping, the core driller and stand would tend to twist. A person standing on the base would, in those circumstances, likely lose his balance and be forced off the base. The risks associated with the sudden movement of such power equipment at ground level may be minimal, but the decedent was operating the core driller at the edge of an obviously dangerous drop.

What the decedent should have done was not the issue before the court—seeking advice on securing the equipment, wearing a harness, insisting on an adequate barrier, staying off the base or operating the equipment from a sitting position were perhaps all possibilities. What the court concluded is that one in Zigler's position should have known that the way he was doing it was dangerous, and unreasonably so. Indeed, Zigler himself apparently recognized that he was at some risk because he joked with his co-worker about being killed just moments before the accident. We cannot conclude that the trial court's determination was clearly erroneous.

■ Finally, plaintiff urges upon us the doctrine of enhanced injury. We believe, however, that the district court correctly determined that the doctrine of enhanced injury was not applicable here.

Plaintiff argues that the concept of "enhanced injury" is merely an extension of the concept of proximate cause. Since Zigler's injuries would have been minor or nonexistent if there had been an adequate barrier, then the lack of a barrier was the proximate cause of his death. She analogizes the enhanced injury concept to the principles inherent in the last clear chance doctrine, describing Zigler's conduct as at most a remote cause, and the lack of a proper barrier as the proximate cause—it being reasonably foreseeable that someone would fall if the only protection was a single strand of rope.

■ The "enhanced risk" concept in Indiana law finds its clearest expression in product liability cases. Since *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977), a manufacturer has had a duty to design so as to avoid unreasonable risks when there is a collision. *Jackson v. Warrum*, 535 N.E.2d 1207, 1215 (Ind.App.1989). Collisions are reasonably foreseeable and the concept recognizes preventable injuries attributable to inadequate design as proximately caused by that defective design. *Miller v. Todd*, 551 N.E.2d 1139 (Ind.1990). The concept, however, as plaintiff points out, also finds expression in negligence cases. Because collisions are reasonably foreseeable, a defendant is accountable for negligence that enhances the risk of harm upon sudden impact. *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258 (Ind.App. 1989).

In that case, however, there was no basis for charging the plaintiff with any negligence and, if there had been, comparative fault would have applied. Here we are controlled by the "all-or-nothing" rule of contributory negligence, with its limited exceptions to the bar against recovery. *See Roggow v. Mineral Processing Corp.*, 698 F.Supp. 1441 (S.D.Ind.1988), *aff'd* 894 F.2d 246 (7th Cir.1990). Neither the last clear chance doctrine nor superseding and intervening cause are applicable here because Zigler's peril was not compounded by the government's subsequent negligence. Both the government's negligence and the decedent's contributory negligence were concurrent contributing causes for the fatal accident, and that, unfortunately for plaintiff, bars recovery.